IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICHARD HOEFT,

                              Plaintiff,

       v.

Corrections Officer RYAN LEWALLEN and
Unit Manager WAYNE OLSON,

                              Defendants.[1]

OPINION AND ORDER

09-cv-121-wmc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action filed under 28 U.S.C. § 1983, plaintiff Richard Hoeft, alleges that defendants violated his religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act by confiscating his swastika on January 12, 2009. Defendants have moved for summary judgment. Dkt. #11.

Plaintiff's RLUIPA claim fails because there is no remedy he can obtain from defendants. His First Amendment claim fails because plaintiff failed to provide any evidence that the confiscation of the swastika placed a substantial burden on his exercise of his

---

[1] Defendant Ryan Lewallen's was previously listed in the caption as "Lewellyn." The caption above now reflects the correct spelling. The caption also includes defendants' first names, which were unknown when plaintiff filed his amended complaint.

1

religion. Accordingly, defendants' motion will be granted.

From the parties proposed findings of fact, I find that the following facts are undisputed and material to deciding this case.

UNDISPUTED FACTS

From September 30, 2008 until February 24, 2009, plaintiff Richard Hoeft was incarcerated at the Stanley Correctional Institution. Upon entering the Wisconsin Department of Corrections system in 2003, Hoeft filled out a form indicating that his religious preference was Protestant. He is also a "true believer" in the swastika.[2] While Hoeft was incarcerated, defendant Ryan Lewallen was a correctional officer and defendant Wayne Olson was a unit supervisor at the Stanley Correctional Institution.

On January 12, 2009, Hoeft was housed in unit 5 and defendants were working first shift there. That day, Lewallen conducted a random cell search of Hoeft's cell in accordance with the institution's policy that every cell be randomly searched once a month. During the search, Lewallen found the drawing of a swastika on a piece of cardboard. Lewallen confiscated the drawing and took it to Olson, who was the supervising officer. No other property was removed from Hoeft's cell that day. Lewallen confiscated the swastika drawing

---

[2] Plaintiff proposes that many religions, including Protestant ones, regard the swastika as a symbol of strength though he fails to cite to any evidentiary support.

2

because personal drawings and depictions of swastikas have the potential to create security threats given the symbol's association with disruptive groups within the prison population.

That same day, defendant Olson spoke with Hoeft about the confiscation of his swastika drawing. Olson told Hoeft that Lewallen was correct to confiscate the drawing because inmates were not permitted to possess swastikas under any circumstances. Hoeft argued that it was his religious right to have the swastika drawing, that he had continuously kept a swastika for at least the last 20 years, and that his cardboard swastika drawing had not been causing tension with any other inmates because it had been in the back of his cell, which was not visible from the outside of the cell.

The swastika is a symbol historically associated with Nazism, Hitler and neo-nazis organizations, as well as with oppression and genocide directed toward racial, religious and ethnic minority groups. The Wisconsin Department of Corrections does not permit possession of the swastika because it has become a symbol of Aryan pride, white supremacy and racial hatred.

The swastika is also a symbol used in several religions, such as Buddhism, Hinduism and Jainism, and cultures, such as Germanic, Greek and Indo-Iranian. However, in western cultures the primary significance of the swastika is its association with white supremacy.

Under Department of Corrections Internal Management Procedure number 6, "The DOC does not permit activities that advocate racial or ethnic supremacy or purity or attacks

3

a racial, religious or ethnic group, promotes hate crimes, jeopardizes the security and order of the institution or violates Federal or State laws or DOC administrative rules." Race hatred and the violence associated with such hatred are specific security concerns within the prison system. Allowing inmates to possess drawings of swastikas in their cell could lead to unrest and racial tension among minority inmates who feel threatened and it could encourage white supremacist activities by inmates.

OPINION

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party. *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). Nonetheless, the party that bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, through responses to or the proposal of additional, affirmative facts, that there is a genuine issue of material fact that requires a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009) (quotation omitted).

The applicable substantive law will dictate which facts are "material." *Darst v.*

*Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). No such issue is presented on this record.

**I**. **Religious Land Use and Institutionalized Persons Act Claim**

Plaintiff's RLUIPA claim is doomed from the start because he cannot obtain any remedy for a violation of the statute under case law binding on this court. In *Nelson v. Miller*, 570 F.3d 868, 885, 889 (7th Cir. 2009), the Court of Appeals for the Seventh Circuit held that under RLUIPA damages are not available as a remedy against state actors regardless of whether they are acting in their official or individual capacities. With respect to the RLUIPA claim brought against defendants as state actors in their official capacities, sovereign immunity shields them from a monetary judgment. *Id.* at 885. With respect to the individual capacity claims, the Seventh Circuit has as a matter of statutory interpretation already concluded that RLUIPA does not allow damages against state actors in their individual capacities, because to provide for such damages "would raise serious questions

regarding whether Congress had exceeded its authority under the Spending Clause." *Id.* at 889.

In his complaint, plaintiff seeks only monetary damages from defendants. He cannot obtain such damages. Even assuming plaintiff wanted some sort of injunctive relief, however, a claim for injunctive relief would be moot. As of February 24, 2009, Mr. Hoeft was released from incarceration and there is no evidence that he will be returning to the custody of the Wisconsin prison system or the Stanley Correctional Institution. "A court's power to grant injunctive relief only survives if such relief is actually needed." *Id.* at 882. Here, no injunctive relief is needed. Accordingly, defendants' motion for summary judgment on plaintiff's RLUIPA claim will be granted.

### C. First Amendment Free Exercise Claim

Plaintiff fares no better on his First Amendment Free Exercise claim. Defendants contend that this claim fails because there is no evidence that his exercise of religion was substantially burdened and confiscation of the swastika was the least restrictive way of advancing compelling government interests. I need not discuss the latter contention because controlling case law again requires rejection of plaintiff's claim under the first.

As plaintiff was made aware when his complaint was screened, he has the initial burden of proving that confiscation of his swastika placed a substantial burden on his ability

6

to exercise his religion. *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (citing *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). Thus, to survive summary judgment, plaintiff needed to provide sufficient evidence for a reasonable jury to find that he suffered a substantial burden on the exercise of his religion. He failed to do so.

A "substantial burden" is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). Plaintiff provides no evidence from which a reasonable jury could find that denying him possession of a personal drawing of a swastika made practice of his Protestant religion "effectively impracticable." Plaintiff does not provide any evidence on which Protestant religion uses the swastika in practice. In his brief, plaintiff mentions the Aryan religion, Plt.'s Br., dkt. #19, at 2, and provides the unsupported and inadmissible proposed fact that "the swastika is a symbol of strength used by many religions including Protestant," Plt.'s PFOF, dkt. #21, at 2, ¶23. However, he does not propose any facts about the Aryan religion, about his affiliation with the Aryan religion or about the Aryan religion's use of a swastika. That plaintiff belonged to this religion and that it uses a swastika are both a matter of speculation and conjecture, neither of which are sufficient to defeat a summary judgment motion. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

Even assuming that Hoeft belonged to an Aryan religion that uses a swastika, there

7

is simply no evidence showing that he was unable to practice this religion effectively without possessing the drawing of a swastika. *Kaufman*, 419 F.3d at 683. Plaintiff's evidence of the "substantial burden" consists only of his own statement that the exercise of his religion, whatever that may be, was substantially burdened. Plt.'s Br., dkt. #19, at 2. Such "unreasoned say-so . . . is insufficient to create a material dispute that would require trial." *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006). Plaintiff needs objective evidence of the "substantial burden" and he fails to provide any. *Id.*

As the responding party, it was plaintiff's burden "to come forward with the evidence that [he] has[.]" *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009). Because plaintiff failed to provide any evidence from which a reasonable jury could find that the exercise of his religion was substantially burdened, defendants' motion for summary judgment on plaintiff's Free Exercise claim will also be granted.

ORDER

IT IS ORDERED that:

(1) The motion for summary judgment filed by defendants Ryan Lewallen and Wayne Olson, dkt. #11, is GRANTED.

8

(2) The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 23rd day of April, 2010.

> BY THE COURT:
>
> /s/
>
> _____
> WILLIAM M. CONLEY
> District Judge